UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD MILLS,

                              Plaintiff,

v.

GENESEE COUNTY, et al.,

                              Defendants.
_____

**REPORT,
RECOMMENDATION
AND ORDER**

11-CV-00383(A)(M)

                    This action has been referred to me by Hon. Richard J. Arcara for supervision of

pretrial proceedings [21].[1]  For the following reasons, plaintiff's motion to amend his Amended

Complaint [137] is denied, and I recommend that this action be dismissed, on the merits, as a

sanction for plaintiff's repeated lies concerning the authorship of a letter to his ex-wife,

defendant Judy Mills.


                              **BACKGROUND**

                    On January 21, 2010 I placed on the record the terms of settlement of three actions

involving plaintiff:  Mills v. Luplow, et al., (4-CV-5(A)(M)), Mills v. Genesee Sheriff Dept, et

al., (3-CV-196(A)(S)) and Mills v. Bryan, et al., (6-CV-751(S)).  *See* Mills v. Luplow, et al.

(4-CV-5(A)(M)), [528].[2]  Although the release which plaintiff was to execute provided that "the

existence of this settlement and the terms and conditions of the settlement . . . shall be deemed

strictly confidential and shall not be divulged by any of the parties . . . except as required by law

---

[1]        Bracketed references are to CM-ECF docket entries.

[2]        To avoid confusion, the bracketed CM-ECF docket entries referred to in this paragraph
of this opinion are from Mills v. Luplow, et al. (4-CV-5(A)(M)).  References to docket entries elsewhere
in this opinion are from this case, 11-CV-00383(A)(M).

or court order" (id., p. 11), it is clear from all the circumstances that neither I nor the parties considered the existence of the settlement (as opposed to its terms) to be confidential. For example, that same day I issued a Text Order [511] stating that "[a]t today's proceeding a settlement was reached . . . the terms of which were placed on the record and will remain confidential. The parties shall file stipulations discontinuing these actions on the merits", and on February 23, 2010 the parties filed a Stipulation of Discontinuance reciting that all three actions had been "fully and finally settled and compromised" [514].

Plaintiff commenced this action on May 5, 2011, alleging, *inter alia*, that defendants "have breached a contract and settlement agreement in 03-cv-00196, 4-cv-0005, 06-cv-00751 . . . . Defendants informed Judy Mills that Richard Mills received a sum of money, who the parties were, the particulars of a contract/settlement, and . . . revealed Mr. Mills private affairs". Complaint [1], ¶¶49-50; Amended Complaint [4], ¶¶50-51.[3]

On September 5, 2012 the Return of Summons was docketed as to defendant Judy Mills, indicating that her Answer was due on September 18, 2012 [102]. At plaintiff's request [104], the clerk of this court entered default against Judy Mills on September 26, 2012 [105]. On October 17, 2012, plaintiff moved for entry of default judgment against Judy Mills [106]. On November 12, 2012 Judy Mills' attorney, Thomas Williams, submitted an Affidavit [113] in opposition to that motion, stating that Ms. Mills "heard about the 'confidential settlement' directly from the Plaintiff, as can be seen from the attached letter". Id., ¶6. That letter (id., p. 3 of 4) reads as follows:

---

[3]     Although Judy Mills was not named as a defendant in the original Complaint, she was named in the Amended Complaint.

"Richard Mills, 02B0778
NYS DOCS IPA L.C.
Five Points Corr. Fac.
State Route 96, Box 119
Romulus, N.Y. 14541

Judy:

If I knew they would make you do paper work and take a day off work I would not have even bothered with this child support.  Sorry.

The law involved say's I only have to pay 500$ during my entire incarceration period so I'm trying to get the support reduced to that amount.

I did get a settlement but it is confidential and I am not to talk about it for any reason.  I could get into trouble for disclosing the terms.  However, My attorney Johanna Dash is sending you a check for 2,001.00$ some time soon.  I have not got the final papers to sign yet.  Please do not say anything to anyone about the amount's or settlement.  if it comes up at the support hearing I'll answer it or address it, I'll have to tell them it's confidential and they would have to seek permission from my Federal Judge about disclosure of the amount's and terms.

Tell Kody to come see me soon.

Rich"

Williams also stated that "[i]n addition, the Defendant Judy Mills received a check from the Plaintiff's attorneys, a copy of which is attached hereto, stating that the check was for 'settlement proceeds' as referenced in the Plaintiff's letter to Judy Mills".  Id., ¶6.  The March 3, 2010 check, drawn on the trust account of the Rupp, Baase law firm in the amount of $2,001, was payable to Judy Mills and bore the notation "Settlement Proceed".  Id., p. 4 of 4.

On November 14, 2012, defendant Judy Mills filed her own Declaration [117], attaching copies of the same two documents [117-1, 117-2] and stating that "[n]o one employed by Genesee County ever told me that Richard settled the case.  I learned about the settlement

from Richard's letter and from the check I received from the law firm that represented Richard. My son Kodey also told me that Richard had settled his case. Kodey said his father told him about the settlement." [117], ¶6. In a second Declaration dated December 3, 2012 [127], she attached additional copies of the letter and settlement check, and stated that "after I received the check, our son Kodey told me that Richard told him he had won his lawsuit against Genesee County". Id., ¶6.

Plaintiff has repeatedly denied that he authored or sent the letter which Judy Mills attributes to him, and accuses defendants of fabricating the letter. *See, e.g.*, Plaintiff's Declaration [122], ¶14 ("It appears that Genesee County and Judy Mills have selectively formed a collusion to form a defense with a forged, unsigned, undated, so-called fabricated letter"); Plaintiff's Declaration [132], p. 7 of 35, ¶4 ("Deny Richard sent the letter"); Id., p. 6 of 35, ¶10(I) ("The fraudulent letter composed by the defendants"); id., p. 6 of 35, ¶10(H)(1) ("now there is at least two different copies of this letter in two different forms");[4] Plaintiff's Amended Declaration [137], ¶10 (Mills did not send this letter which has been generated by the defendants them self's"); Id., ¶16 ("plaintiff did not type the letter"); Id., p. 10 of 85, ¶R ("Plaintiff stands firm he did not author these now two letters, and . . . the defendants have created a document or altered a document, that does look close to Mr. Mills as the author"); Plaintiff's Declaration [152], ¶2 ("Richard Mills did not send the letter or author the letter"); Id., p. 5 of 14, ¶D ("Richard Mills never sent any letter Judy Mills claims, and she has no envelope as Richard did not send the

---

[4]     By "two different forms", plaintiff refers to two photocopies of the letter ([132], pp. 32 and 33 of 35. However, other than the fact that the second copy is lighter than the first, I detect no difference between them.

letter"); Id., p. 5 of 14, ¶E ("The letter was generated by one of the defendants or for one of the defendants by someone other than Richard Mills").

On December 14, 2012, the Genesee County defendants moved pursuant to Fed. R. Civ. P. ("Rule") 11 for dismissal of the action and for other sanctions, due to "Plaintiff's filing of frivolous claims for improper purposes, intentional misrepresentations to the Court and bad faith conduct in the prosecution of his claims" [129]. At a conference before me on December 21, 2012 [133], the following exchange took place:

> THE COURT: "You say that the typewritten letter which Judy Mills claims to have received from you is fraudulent and was composed by the defendants, is that your position, Sir?
>
> PLAINTIFF:   Yes it is, Your Honor. I got two different versions of a printout of that - it is worded  the same but it is printed in two different types of print.
>
> THE COURT: What's different about the two versions?
>
> PLAINTIFF: It looks like two different printouts - two separate types of print on it.
>
> THE COURT: You're telling me that you did not type a letter to Ms. Mills in either version, right?
>
> PLAINTIFF: Yes, Your Honor.
>
> THE COURT: You didn't tell her that you got a settlement but that it is confidential and you are not to talk about it? You didn't make that statement to her? Is that your position, Sir?
>
> PLAINTIFF: Yes, Your Honor, that is my position.
>
> THE COURT: And you are willing to say that under oath?
>
> PLAINTIFF: Yes, Your Honor.

THE COURT: We are into some heavy territory, I will say that . . . .
Now, do you deny that the check was sent to her?

PLAINTIFF: No, that check was sent to her as per the terms of the
settlement agreement . . .

THE COURT: Is it your position, Sir, that you did not tell anybody
that you had received a settlement?

PLAINTIFF: The only one that knew was my power of attorney.

THE COURT: You didn't tell your son?

PLAINTIFF: No. My son knew I had received money but he did not
know from whom or from where and I never discussed it with him
what I had got.

\* \* \*

THE COURT: I'm going to give you an opportunity to respond to
Mr. Suozzi's motion for sanctions. I'm not prejudging you, but you
are now stating the letter was a sham and was fabricated by
defendants, and if I find that not to be true this case is over.

PLAINTIFF: Yes, Your Honor."[5]

As part of his response to the motion for sanctions, plaintiff sought to amend his

complaint by alleging that defendants disclosed to Judy Mills the amount, rather than the fact, of

the settlement. [137], pp. 35-36 of 85, ¶¶47, 51.  He suggested that the amendments would

"remove the concerns of the defendants with the check and the alleged letter". Id., p. 20 of 85,

¶zz(4).

An evidentiary hearing was held on April 29, 2013 [163], at which Judy Mills,

David Rich (the child support investigator for the Genesee County Department of Social

Services), Kodey Mills, Amy Mathiesen (plaintiff's sister), and plaintiff himself testified.

_____

[5]     Chambers transcription from the digital recording.

Judy Mills identified as defendants' Exhibit A [155-10] the letter which she had received from plaintiff regarding the settlement (id., p.10). She stated that she received the letter in January 2010 (id., pp. 14, 32). The letter came in an envelope from Five Points Correctional Facility. She did not save the envelope because she did not think she needed it (id., p. 11). The envelope contained plaintiff's name and DIN number, which is an identifying number for correctional inmates (id., pp. 11-12).

She identified as defendants' Exhibit B [155-1] the March 3, 2010 check which she received from the Rupp Baase law firm (id., p. 12). She testified that when she saw the check, she thought there might be more to the settlement that plaintiff wasn't giving her (id., p. 15). At that time, plaintiff owed $29,000 in child support for their son Kodey (id.). At some point thereafter she tried to enforce plaintiff's outstanding child support obligation. She contacted David Rich at the Genesee County Department of Social Services Child Support Enforcement Unit (id.). She had filed paperwork with Rich when she left plaintiff in 2001. She told Rich that Mills had received a settlement and asked him to find out the amount. Rich sent her a letter dated January 4, 2011 (Defendants' Exhibit C) [155-2] (id., p. 19). She then had a conversation with him and made notes of that conversation on the letter. Her notes say that "Mr. Zambito told our attorney $12,000" (id.,p. 20).

She then commenced child support enforcement proceedings in Genesee County Family Court. She believes she may have told the court that the settlement was for $12,000. Before Rich told her, she did not know the amount of the settlement (id., p. 17). When shown her February 7, 2011 e-mail stating that she "just found our recently through our County Legislature that the settlement was for $12,000.00" ([155-5]), she stated: "I spoke in error, must be. Because

Mr. Rich told me in January . . . that's how I found out . . . . I didn't find out from a county legislator, I found out from . . . Genesee County Support Unit". [163], p. 79.

David Rich testified that his job is to enforce child support orders, and he stated that settlement proceeds of claims for personal injuries are not exempt from support obligations (id., p. 43). He stated that Judy Mills contacted him in October 2010 to enforce plaintiff's child support obligation (id., p. 52). She told him that she had learned that plaintiff had received a settlement, and asked him to investigate (id., p. 53). She gave him a copy of the $2,001 check from plaintiff's attorneys, which was credited toward the support obligation (id., p. 54).

Judy told him that she thought the District Attorney had been involved in the settlement (id., p. 44). He then spoke to David Gann at the District Attorney's office, who told him that his office was not involved, and that he should speak to the County Attorney (id., p. 45). His supervisor, Peter Antonucci, then contacted Assistant County Attorney David DiMatteo, who contacted then County Attorney Charles Zambito. DiMatteo told Antonicci that plaintiff's settlement was for $12,000, but that he could not give documentation because it was confidential (id.). Rich then wrote the January 4, 2011 to Judy Mills. When she contacted him in response to the letter, he told her what he had learned about the amount to the settlement (id., p. 46). He stated that the reference to "our attorney" in her notes on the January 4 letter ("Mr. Zambito told our attorney $12,000) is to Assistant County Attorney David DiMatteo DiMatteo, who was assigned to the child support enforcement unit (id., p. 47) Rich testified that it was clear to him that Judy Mills did not know the amount of the settlement before he disclosed it to her. Id., pp. 47-48.

He did not speak to plaintiff about the settlement, because past experience had shown that he generally would not get accurate information from the recipient of the settlement (id., p. 58).  He recalled that the $27,000 judgment against plaintiff for child support was eventually reduced to $500, which was paid, and the file was closed (id., pp. 59-60).

Kodey Mills testified that plaintiff told him he got a settlement, and he told Judy about the settlement after Judy received the check from plaintiff (id., p. 62).  He stated that plaintiff has occasionally misspelled his name in the past (id., pp. 62-63).  "There have been times when my father has written letters to me and has misspelled my name by leaving out the 'e'." Kodey Mills Declaration [139], ¶10.

Amy Mathisen testified that she spoke to Judy Mills on March 30, 2011 (id., p. 72).  Judy questioned her about whether plaintiff had received a settlement, and she responded that she did not know, to which Judy replied "I know he got money; a county legislator and people who work at the county told me he got money" (id., pp. 73-74).

Plaintiff testified that on December 22, 2009 he filed a petition in Genesee County Family Court seeking to reduce his child support obligation to $500, because Kodey was not living with Judy (id., pp. 83, 84, 87).  By Order issued September 16, 2011, retroactive to March 2011, his support obligation was reduced to $500, which he paid (id., pp. 84, 87).  He again denied sending the letter to Judy Mills.  "I never sent this.  I didn't author it, it's not dated, it's not signed" (id., p. 84).  "I didn't write the letter" (id., p. 87).  "I'm not sure what it says, because I didn't write it" (id., p. 89).

At the conclusion of the hearing, I told plaintiff:  "I want you to address both whether or not you sent that letter, and . . . if I find that you did send that letter, why I shouldn't

impose sanctions upon you either under Rule 11 or under the Court's inherent authority or both, including the possibility of dismissing this action" (id., p. 92). I confirmed that directive by Text Order dated April 30, 2013 [154], requiring the parties' post-hearing submissions by May 15, 2013. I subsequently extended the deadline to 10 days after receipt of the hearing transcript [156].

On May 5, 2013, plaintiff's fellow inmate, David Rhodes, submitted a letter [159] typed on his typewriter, in support of plaintiff's argument that the letter at issue was forged. At proceedings on May 24, 2013, and confirmed in a Text Order that same date [161], I stated that "the evidentiary hearing is closed and I will not consider David Rhodes May 5, 2013 letter". In violation of that Text Order, plaintiff's post-hearing submission [165] includes another copy of the Rhodes letter ([165-15], p. 4 of 4), as well as additional factual assertions which were not offered prior to or at the hearing (*see*, *e.g.*, Post Hearing Submission [165-2], ¶¶8-10 and Ex. 12 ([165-15])).

While I have considered plaintiff's arguments based upon the record through the conclusion of the April 29 evidentiary hearing, I will not consider any factual materials (or arguments based thereon) submitted after the hearing, since plaintiff has neither moved to reopen the hearing nor shown good cause to do so.


**ANALYSIS**

**A.      Is Plaintiff Entitled to Again Amend His Complaint?**

As earlier noted, plaintiff seeks to amend his Amended Complaint in order to render the question of his authorship of the letter a non-issue. [137], p. 20 of 85, ¶zz(4), pp. 35-36 of 85, ¶¶47, 51. For reasons to be discussed, I conclude that defendant has acted in bad in denying

authorship of the letter to Judy Mills. Therefore, his motion to amend is denied. *See* Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (Generally, a district court has discretion to deny leave for good reason, including . . . bad faith").

**B.    Is Plaintiff Entitled to a Jury Trial on the Sanctions Issue?**

Plaintiff argues that "credibility determinations are to be made by a jury in a trial". Plaintiff's Memorandum of Law [137], p. 3. Not under these circumstances. "While a determination of credibility is generally a factual matter within the province of a jury, the 'fact-dependent legal standard mandated by Rule 11' is an issue for the district court to determine." Pope v. Federal Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (*quoting* Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990)). *See also* Ball v. A.O. Smith Corp., 451 F.3d 66, 68 (2d Cir. 2006) ("Judge Melancon held a two-day evidentiary hearing to determine whether sanctions were warranted under Rule 11 . . . or the court's inherent power to sanction. The judge heard testimony"); Bettis v. Toys R Us, 646 F.Supp.2d 1273, 1276 (S.D.Fla. 2009) ("After holding two days of hearings, Magistrate Judge Rosenbaum issued a 92-page Report and Recommendation").

Therefore, the evidentiary hearing was properly held before me rather than before a jury.

**C.    What is the Appropriate Standard of Proof?**

Although the Genesee County defendants moved for dismissal of this action against *all* defendants as a sanction, it is not clear to me that they have standing to move on behalf

of defendant Judy Mills, who did not join in their motion.  Therefore, as indicated in my April 30, 2013 Text Order [154], I will instead decide the issue on my own motion, pursuant to Rule 11(c)(3) and the court's inherent authority, both of which require clear and convincing evidence. *See* Rankin v. City of Niagara Falls, ___ F.R.D. ___, 2013 WL 1501682, *12 (W.D.N.Y. 2013) (Arcara, J.) ("in the Second Circuit, a district court can impose [Rule] 11(c)(3) sanctions on its own initiative only upon a finding of subjective bad faith . . . . A court's factual findings . . . under [Rule] 11(c)(3) must meet the high evidentiary burden of clear and convincing evidence"); S.E.C. v. Smith, 798 F.Supp.2d 412, 422 (N.D.N.Y. 2011), aff'd, 710 F.3d 87 (2d Cir. 2013) ("To impose sanctions under the Court's inherent authority . . . there must exist clear and convincing evidence that an individual's conduct was not merely negligent but was undertaken with subjective bad faith").

Moreover, plaintiff's repeated assertions under oath that he did not author the letter to Judy Mills if in fact he did would constitute fraud, which likewise must be "shown by clear and convincing evidence".  Passlogix, Inc. v. 2FA Technology, LLC, 708 F.Supp.2d 378, 394 (S.D.N.Y. 2010).  Therefore, I may sanction plaintiff only if I find, by clear and convincing evidence, that he authored the letter to Judy Mills.

**D.     Is There Clear and Convincing Evidence that Plaintiff Authored the Letter?**

Although proof of fraud requires clear and convincing evidence, fraud "is rarely susceptible of direct proof and must ordinarily be established by circumstantial evidence and the legitimate inferences arising therefrom".  Goshen Litho, Inc. v. Kohls, 582 F.Supp. 1561, 1564 (S.D.N.Y. 1983).  "Circumstantial evidence [of fraud] is not only sufficient, but in most cases it is

the only proof that can be adduced." <u>Rea v. State of Missouri</u>, 84 U.S. 532, 543 (1873). Having

heard the witnesses and observed their demeanor, I find the circumstantial evidence that plaintiff

authored the letter to be clear and convincing.

I credit Judy Mills' testimony that she received the letter in an envelope from Five

Points Correctional Facility in January 2010. Although plaintiff questions why she did not keep

the envelope, I see little reason for her to have done so at the time. Moreover, she had no incentive

to fabricate that testimony. Plaintiff's suggestion that the letter was "forged" in order to "form a

defense" (plaintiff's Declaration [122], ¶14)[6] makes little sense. In the first place, no defense was

necessary. The settlement agreement required confidentiality "except as required by law or court

order" (<u>Mills v. Luplow, et al.</u> (4-CV-5(A)(M)), [528], p. 11), and plaintiff *himself* would have

been required to disclose the amount of the settlement pursuant to N.Y. Family Court Act §424-a

(a), which provides that "in all support proceedings in family court, there shall be compulsory

disclosure by both parties of their respective financial states . . . . No showing of special

circumstances shall be required before such disclosure is ordered and such disclosure may not be

waived by either party or by the court".

Secondly, the letter disclosed only the existence of the settlement, rather than its

amount. Since plaintiff admits that the his attorneys sent a March 3, 2010 check Judy Mills which

mentioned "settlement proceed" ([163], p. 88; [155-1]), she would have had no reason to fabricate

a letter mentioning the same settlement.

---

[6] "[I]t is forged to prove a legal position in the suite [*sic*]." Plaintiff's Final Submission
After Hearing [165-3], p. 3.

If anything, the far-fetched nature of plaintiff's explanations for why the letter would have been forged cuts against him.  *See* <u>Schiff v. United States</u>, 919 F.2d 830, 833 (2d Cir.1990), <u>cert. denied</u>, 501 U.S. 1238 (1991) ("Fraud can be proved by circumstantial evidence. Such evidence may include . . . implausible explanations"); <u>United States v. Cano-Guel</u>, 167 F.3d 900, 905 (5th Cir. 1999) ("implausible explanations . . . can reasonably be relied upon as circumstantial evidence of guilty knowledge").  *See also* <u>Diallo v. I.N.S.</u>, 232 F.3d 279, 287-88 (2d Cir. 2000) ("an adverse credibility determination [may be] based upon . . . inherently improbable testimony") and <u>United States v. Lawson</u>, ___F. Supp.2d___, 2013 WL 4407100, *1 (W.D.N.Y. 2013) (Arcara, J.) ("the officers' testimony at the hearing . . . was inherently improbable").

Several other factors also point to plaintiff's authorship of the letter.  For example, the letter misspells the name of plaintiff's son Kodey as "Kody", and plaintiff does not refute Kodey's Declaration stating that on occasion plaintiff "has misspelled my name by leaving out the 'e'" ([139], ¶10).  "[T]he unusual misspellings, clearly have some tendency to make . . . authorship of the . . . letters more probable."  <u>United States v. Clifford</u>, 704 F.2d 86, 90 (3rd Cir. 1983). Moreover, the letter mentions not only the settlement, but also the fact that plaintiff was seeking to reduce his support obligation to $500.  In <u>United States v. Newton</u>, 891 F.2d 944, 947 (1st Cir. 1989), involving "a three-page unsigned and undated typed document", the court reasoned that "[t]here are statements in the [document] from which it could be inferred that

Newton authored the document . . . . Having found that the document was authentic, admission of the document as a statement by a party opponent under Fed.R.Evid. 801(d)(2)(A) was proper".[7]

None of plaintiff's arguments raise significant doubts in my mind as to his authorship of the letter. For example, while he argues that "David Rich's testimony revealed Mr. Mills was never interviewed, he never spoke to Mr. Mills, and it's his practice to do so" (Plaintiff's Final Submission After Hearing [165-3], p. 5), Rich in fact testified that he did not interview plaintiff because past experience had shown that he generally would not get accurate information from the recipient of the settlement ([163], p. 58).

Plaintiff further argues that Judy Mills "appeared in the Family Court on March 30, 2010 . . . and never even produced the letter now alleged . . . . [W]hy did Mrs. Mills not raise the letter and try to enforce support in early 2010?". Plaintiff's Post Hearing Submission [165-2], ¶16, 19. However, plaintiff himself admits that the settlement check (expressly mentioning the settlement) was sent to her in early March, 2010. Thus, her failure to earlier move to enforce plaintiff's support obligations - while curious - does not mean that she did not receive the letter in January 2010, as she testified.

The fact that Judy Mills later sent an e-mail stating that she learned the amount of the settlement from a County Legislator, whereas she testified that she learned it from David Rich and that her statement in the e-mail was erroneous, does not in my view significantly undermine

---

[7]       *See also* 2 McCormick on Evidence §224 (7th ed.) ("One circumstance recognized as sufficient is that the letter discloses knowledge that the purported signer would be likely to have or that otherwise identifies a person as the probable author. The knowledge need not be uniquely held by the purported signer . . ."); United States v. Mangan, 575 F.2d 32, 42 (2d Cir.), cert. denied, 439 U.S. 931 (1978) (the "conclusion that mere contents will not suffice unless only the author would have known the details is contrary to the federal rules and unsound").

her credibility. *See* <u>Johns Hopkins University v. CellPro</u>, 894 F.Supp. 819, 830 (D.Del. 1995) ("a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately"); 4 <u>Modern Federal Jury Instructions (Civil)</u>, §76.01[1] (Matthew Bender 2011) (same).

In any event, I need not find *all* of Judy Mills' testimony to be credible in order to credit - as I do - her testimony that she received the letter from Five Points Correctional Facility in January 2010. "[A]s trier of fact, the judge is entitled . . . to believe some parts and disbelieve other parts of the testimony of any given witness." <u>Krist v. Kolombos Rest. Inc.</u>, 688 F.3d 89, 95 (2d Cir. 2012); <u>United States v. Lawson</u>, ___F. Supp.2d___, 2013 WL 4407100, *3 (W.D.N.Y. 2013) (Arcara, J.) (court "found defendant in general to be very credible [although] not 100 percent credible, because there were some question marks in his testimony").

Judy Mills' testimony, coupled with the other factors already discussed, leads me to find by clear and convincing evidence that plaintiff authored the letter [155-10], and therefore that his repeated denials of authorship are false.


**E.     What Is an Appropriate Response to Plaintiff's Repeated Misrepresentations?**

"If it is shown by clear and convincing evidence that a party perpetrated a fraud on the Court, the Court may consider the following five factors in determining an appropriate sanction: (I) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was

corrected; and (v) whether further misconduct is likely to occur in the future.'" Passlogix, 708 F.Supp.2d at 394.

Each of these factors will be addressed:

### 1.   Was the Misconduct the Product of Intentional Bad Faith?

Plaintiff's repeated lies concerning his authorship of the letter clearly constitute intentional bad faith. *See* Rankin, 2013 WL 1501682, *12 ("The higher *mens rea* standard of subjective bad faith applicable to [Rule] 11(c)(3) sanctions can be satisfied by a misleading representation to a district court for an improper purpose"); In re Gushlak, 2012 WL 2564523, *2 (E.D.N.Y.2012) ("Since the Circuit clarified the standard for court-initiated sanctions, district courts have found subjective bad faith in a variety of cases . . . [such as] lying to the magistrate judge").

### 2.   To What Extent did the Misconduct Prejudice the Injured Party?

"Perjury alone does not constitute fraud upon the court . . . . Rather, such an affront occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action." Skywark v. Isaacson 1999 WL 1489038, *14 (S.D.N.Y. 1999).  Here, by creating this smokescreen concerning his authorship of the letter, plaintiff has intentionally delayed the proper and prompt adjudication of his claims, to the detriment of defendants as well as the court. *See* Savatxath v. City of Binghamton, 2013 WL 4805767, *2 (N.D.N.Y. 2013) (noting "the inherent prejudice to defendants resulting from any delay in the proceedings, [and] the court's interest in managing its docket").

### 3.    Is There a Pattern of Misbehavior Rather than an Isolated Instance?

In his filings with this court as well as in his testimony, plaintiff repeatedly denied having authored the letter, and accused defendants of fabricating it.  The effect of plaintiff's misrepresentations is "exacerbated by repetition".  E-Pass Technologies, Inc. v. 3Com Corp., 559 F.3d 1374, 1379, 1380 (Fed. Cir. 2009).


### 4.    Was the Misconduct Corrected?

In a word, no. Plaintiff lied repeatedly, both on paper and to my face, even after I had warned him that dismissal was likely if I found that he had authored the letter.


### 5.    Is Further Misconduct Likely to Occur?

Given plaintiff's track record to date, I have little reason to believe that he would not lie again if it suited him.  See DAG Jewish Directories, Inc. v. Y & R Media, LLC, 2010 WL 3219292, *5 (S.D.N.Y.2010) ("in light of the past pattern of misconduct and lack of admission or remorse, further misconduct seems likely").

"Our judicial system generally relies on litigants to tell the truth . . . .  Thus, when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his rights to have his claim decided on the merits."  McMunn v. Memorial Sloan-Kettering Cancer Center, 191 F. Sup.2d 440,  445 (S.D.N.Y. 2002).  "[D]ismissal is a harsh sanction to be used only in extreme situations . . . . When faced with a fraud upon the court, however, such an powerful sanction is entirely appropriate."  Id. at 461.  See also Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991)

("outright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion").

While I have considered the possibility of lesser sanctions (such as a monetary fine), nothing short of outright dismissal seems an appropriate response under these circumstances. "To fail to dismiss here would send a message to litigants that it is permissible to lie . . . in order to further your claim." Skywark v. Isaacson, 2000 WL 145465, *2 (S.D.N.Y. 2000).

In addition to dismissal, the Genesee County defendants also ask that I "sanction Mr. Mills by . . . awarding costs of $10,000.00 and enjoining him from any future claims against Judy Mills, Genesee County and its employees". Post Hearing Memorandum [167], pp. 6-7. Given plaintiff's status as an inmate, a fine does not appear feasible, and while "[i]t is beyond peradventure that a district court possesses the authority to enjoin a pro se litigant from further vexatious litigation", Ruest v. City of Rochester, 2013 WL 3456955, *6 (W.D.N.Y. 2013) (Siragusa, J.), I do not believe that such a sanction is warranted at this time. However, I caution plaintiff that he is on very thin ice, and that future filings will be carefully monitored.[8]

---

[8]     See Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Under the Prison Litigation Reform Act ('PLRA'), a prisoner who accumulates three 'strikes' (dismissed actions that were 'frivolous, malicious, or failed to state a claim') is barred from bringing additional civil actions or appeals in forma pauperis, unless she is 'under imminent danger of serious physical injury.' See 28 U.S.C. §1915(g) . . . . Mills has, at a minimum, five strikes").

## CONCLUSION

For these reasons, that portion of plaintiff's motion [137] which seeks to amend his Amended Complaint is denied, and on my own motion I recommend that this action be dismissed, on the merits, as a sanction pursuant to Rule 11(c) and this court's inherent power. All other pending motions [68, 89, 99, 109, 111, 120, 122, 129, 132, 135, 137,[9] 145 and 149] are therefore denied as moot, without prejudice to reinstatement if this recommendation is not adopted.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by October 7, 2013 (applying the time frames set forth in Rules 6(a)(1)(c), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the

---

[9]     Plaintiff's motion [137] also seeks other relief in addition to amending the Amended Complaint.

objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

DATED:     September 19, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
